UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/3/08

------------------------------------X
                              :

ROBIN BAY ASSOCIATES, LLC,     :

               Plaintiff,   :   No. 07 Civ. 376 (JMB)
                              :   <u>MEMORANDUM AND ORDER</u>

       -v-                :

MERRILL LYNCH & CO.,        :

              Defendant.  :

------------------------------------X

Judith M. Barzilay, Judge[*]

    Plaintiff Robin Bay Associates, LLC ("RBA"), brings this
action against Defendant Merrill Lynch & Co. ("Merrill Lynch"),
for breach of fiduciary duty, professional negligence, and breach
of contract while acting as RBA's placement agent to raise funds
for the construction and operation of a beach resort and casino
in the Seven Hills district of St. Croix, U.S. Virgin Islands.
Decl. of Paul Kunz Ex. A § 1(a) ("Kunz Decl. Ex. A"). RBA seeks
damages resulting from Merrill Lynch's failure to obtain adequate
financing for the purchase of land in Seven Hills, and also
claims over $250 million in lost profits. Compl. ¶¶1, 5.
Merrill Lynch moves to dismiss all claims pursuant to Rule 12(c)
of the Federal Rules. *See* Fed. R. Civ. P. 12(c). In this
diversity action, the court has jurisdiction under 28 U.S.C.

---

[*] The Honorable Judith M. Barzilay, Judge, United States
Court of International Trade, sitting by designation.

§ 1332.[2]  *See* § 1332(a)(1).  For the reasons set forth below,
Defendant's motion is granted in part and denied in part.

## I. Background

Curtis Robinson ("Robinson") and David Kagan ("Kagan")
formed RBA, a limited liability company, in 2001 for the purpose
of developing a first-class beach resort and casino in St. Croix
called the "Seven Hills Beach Resort and Casino" ("Seven Hills
Resort").  Compl. ¶6.  Through multiple phases of development,
RBA planned to create a resort of grand proportions, offering
several hundred hotel rooms and residential units, various
recreational facilities, and a 20,000 square-foot casino.  Compl.
¶18.  In anticipation of the project, RBA acquired an option to
purchase a 618-acre beachfront parcel of land in the Seven Hills
district of St. Croix.  Compl. ¶¶21-22.  In addition, RBA applied
for a casino license from the Virgin Islands Casino Commission,
for which a reservation was granted on January 9, 2002.  Compl.
¶23.  RBA also secured commitments from leading firms to design,
construct, and manage the Seven Hills Resort.[4]  Compl. ¶¶25-26.

---

[2] "[F]ederal courts sitting in diversity apply state
substantive law and federal procedural law." *Gasperini v. Ctr.
for Humanities, Inc.*, 518 U.S. 415, 427, (1996).  In this case,
Rule 12(c) directly governs Defendant's motion for judgment on
the pleadings.  *See* Fed. R. Civ. P. 12(c).  As for the
substantive claims, the parties have agreed in the contract to
apply New York law.  Kunz Decl. Ex. A § 12(e).

[4] For example, RBA had an agreement with Marriott Hotels
International B.V., to manage and operate the Seven Hills hotel.

According to RBA, "the foundation had been set to develop and operate one of the largest casinos in St. Croix." Compl. ¶23.

Before engaging Merrill Lynch, RBA attempted to raise funds for the project independently and identified Sand Creek Capital Partners, LLC ("Sand Creek") as a potential investor. Compl. ¶34. Recognizing the need for professional assistance in securing the purchase money, RBA executed an agreement with Merrill Lynch to serve as its exclusive financial advisor and placement agent. Compl. ¶17. Pursuant to the agreement, Merrill Lynch was obligated to identify and secure financing from potential investors on a "reasonable best efforts basis," and only upon securing those funds did it become entitled to payment from RBA. Kunz Decl. Ex. A §§1(a), 5(a). Accordingly, RBA advised all of their potential investors, including Sand Creek, that further talks would be conducted through Merrill Lynch. Compl. ¶34. For this type of service, Merrill Lynch limited its liability to losses resulting from "bad faith or gross negligence." Kunz Decl. Ex. A, Annex A.

Allegedly, Merrill Lynch expressed great confidence that it would secure financing for the Seven Hills project and advised RBA to seek a short-term extension of the land purchase option, rather than renew the option for an additional year. Compl.

Compl. ¶¶16(c), 25. When the Seven Hills project stalled, RBA lost that commitment and Marriott agreed to manage the hotel of a different resort in St. Croix. Compl. ¶64(d).

¶¶32, 36.  In June 2005, Merrill Lynch in conjunction with RBA reached an agreement with Sand Creek to finance the purchase of the 618-acre property in St. Croix.  Compl. ¶39.  Robinson and Kagan formed a separate entity, Robin Bay Realty, LLC ("RBR"), to purchase the property.  Compl. ¶¶7, 40.  In anticipation of receiving the funds, RBR prepared a warranty deed and placed it in escrow; however, despite repeated assurances, Sand Creek never delivered the purchase money as promised.  Compl. ¶¶41, 43 & 45.

As a result, RBA again extended the land purchase option while Merrill Lynch searched for alternative sources of funding. Compl. ¶50.  In August 2005, Merrill Lynch recommended the hedge fund DE Shaw & Co. ("DE Shaw") as a potential investor, which offered to finance the purchase of land.  Compl. ¶51.  RBA rejected the offer because it perceived the terms as "entirely unreasonable and confiscatory."  Compl. ¶52.  As the process of raising capital proved more challenging than expected, RBA permitted its purchase option to expire on October 15, 2005, and less than a month later, Merrill Lynch terminated the private placement agreement with RBA.  Compl. ¶¶22, 53 & 54.  According to Robinson and Kagan, the fact that Merrill Lynch withdrew from the project caused other prospective investors to "erroneously assume that the Seven Hills project was not viable."  Compl. ¶¶57-58.  Consequently, RBA could not secure funding for the project and the Casino Control Commission revoked RBA's

reservation for a casino license.  Compl. ¶¶ 55-56.

Ultimately Robinson and Kagan obtained financing
independently from new investors and purchased the Seven Hills
parcel of land at a price of $12 million on January 14, 2007.
Compl. ¶¶57, 61 & 63.  However, instead of continuing the project
through RBA, Robinson and Kagan designated RBR as the business
entity to proceed with the project.  Compl. ¶¶63, 66.  These new
investors collectively have an 81 percent interest in RBR,
leaving Robinson and Kagan with a minority 18.8 percent interest
in the Seven Hills project, which may increase to 34.4 percent if
they timely repay certain loans.  Compl. ¶¶69-72.  Although
Robinson and Kagan continue to own 95 percent of RBA, RBA has no
ownership interest in the Seven Hills Resort.  Compl. ¶67.  On
January 17, 2007, RBA filed suit against Merrill Lynch for breach
of contract, professional negligence, and breach of fiduciary
duty.

## II. Standard of Review

Under Rule 12(c), a motion for judgment on the pleadings may
be granted "where material facts are undisputed and where a
judgment on the merits is possible merely by considering the
contents of the pleadings." *Sellers v. M.C. Floor Crafters,
Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).  In deciding a motion for
judgment on the pleadings, "the district court must accept all
allegations in the complaint as true and draw all inferences in

the non-moving party's favor." *Patel v. Contemporary Classics*,

259 F.3d 123, 126 (2d Cir. 2001). The motion will be granted if

the movant establishes that "no material issue of fact remains to

be resolved and that [it] is entitled to judgment as a matter of

law." *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d

Cir. 1990).

### III. Discussion

### A. Breach of Fiduciary Duty

RBA claims that Merrill Lynch owed it a fiduciary duty under

the terms of the private placement contract, which granted

Merrill Lynch the exclusive right to act on behalf of RBA to

secure funds for the Seven Hills project. Compl. ¶¶82-87.

Merrill Lynch seeks to dismiss this claim because it is

duplicative of Plaintiff's claim for breach of contract. Def.

Br. 8-9. Merrill Lynch further asserts that under New York Law

its relationship with RBA did not give rise to a fiduciary duty.

Def. Br. 12-14.

In New York, "[a] cause of action for breach of fiduciary

duty which is merely duplicative of a breach of contract claim

cannot stand." *William Kaufman Org., Ltd. v. Graham & James LLP*,

703 N.Y.S.2d 439, 442 (N.Y. App. Div. 2000); *see also Reuben H.*

*Donnelly Corp. v. Mark I Marketing Corp.*, 893 F. Supp. 285, 289

(S.D.N.Y. 1995)("[W]hen the alleged fraud is not separate and

distinct from a failure to perform under a contract, the claim is

treated as one sounding in contract rather than tort."). Plaintiff must set forth allegations that, "apart from the terms of the contract . . ., [demonstrate that] the parties created a relationship of higher trust than would arise from [their contracts] alone . . ., so as to permit a cause of action for breach of a fiduciary duty independent of the contractual duties." *Brooks v. Key Trust Co. Nat'l Assoc.*, 809 N.Y.S.2d 270, 272-73 (N.Y. App. Div. 2006) (second brackets in original) (quotations & citations omitted); *see Kaminsky v. FSP Inc.*, 773 N.Y.S.2d 292, 293 (N.Y. App. Div. 2004).

RBA's allegations for breach of fiduciary duty - failure to qualify potential sources of financing, failure to find alternative sources of financing and focusing exclusively on Sand Creek, and failure to ensure delivery of promised funds - are identical to those that form the basis of RBA's breach of contract claim. Compl. ¶¶76-81, 82-87. In a conventional business relationship, there must be special circumstances, such as the commission of active fraud, that elevates the violation from a breach of contract to breach of fiduciary duty. *See Apple Records, Inc. v. Capitol Records, Inc.*, 529 N.Y.S.2d 279, 283 (N.Y. App. Div. 1998); *Mandelblatt v. Revlon Group, Inc.*, 521 N.Y.S.2d 672, 676 (N.Y. App. Div. 1987). Apart from some conclusory assertions regarding Merrill Lynch's breach of trust and confidence, there is almost total overlap between Plaintiff's

claims for breach of contract and fiduciary duty. Compl. ¶¶ 76-81, 82-87. This alone is sufficient to dismiss Plaintiff's claim for fiduciary duty.

Alternatively, though, Merrill Lynch claims that its business relationship with RBA did not create a fiduciary duty. Def. Br. 12-14. A fiduciary duty arises when "one has reposed trust or confidence in the integrity or fidelity [of] another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another." *Reuben H. Donnelly Corp.*, 893 F. Supp. at 289. The relationship created by a placement agreement, however, does not automatically give rise to a fiduciary duty. *Cf. VTech Holdings, Ltd. v. Pricewaterhouse Coopers LLP*, 348 F. Supp. 2d 255, 268 (S.D.N.Y. 2004); *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951, 952-953 (E.D. Mich. 1978). Whether "a relationship is fiduciary in nature must be determined on the basis of the services agreed to by the parties." *Vtech Holdings Ltd.*, 348 F. Supp. 2d at 268.

To establish a fiduciary duty in this context, RBA relies on cases in which courts found that a fiduciary duty may exist when an investment bank negotiates on behalf of a client. *See Frydman & Co. v. Credit Suisse First Boston Corp.*, 708 N.Y.S.2d 77, 79 (N.Y. App. Div. 2000)("*Frydman*"); *Wiener v. Lazard Freres & Co.*, 672 N.Y.S.2d 8, 12, 14. (N.Y. App. Div 1998)("*Wiener*"); Pl. Br.

10. Both *Frydman* and *Wiener* are distinguishable from the case at
bar. In *Frydman*, the defendant went beyond a contractual
violation because it actively betrayed the plaintiff's trust by
committing finances for the acquisition of a corporation to
another prospective buyer while representing plaintiff in
negotiations to purchase the same company. *See Frydman*, 708
N.Y.S.2d at 79. Similarly, in *Wiener*, the defendant revealed
plaintiff's confidential information to a third party, which
enabled it to outbid the plaintiff in a real estate transaction.
*See Wiener*, 672 N.Y.S.2d at 12, 14; *see also Apple Records, Inc.*,
529 N.Y.S.2d at 283 (denying motion to dismiss breach of
fiduciary duty claim where defendants deceptively sold
plaintiff's records for profit without their knowledge or
consent); *Mandelblatt,* 521 N.Y.S.2d at 676 (denying motion to
dismiss breach of fiduciary duty claim where defendant made
disparaging remarks while acting on the plaintiff's behalf).

The supposed breach of fiduciary duty in this case involves
a failure to perform duties that are contractual in nature, as
compared to affirmative acts of betrayal or fraud that violate
standards of conduct beyond those bargained for in the contract.[1]

---

[1] New York courts have held that investment banks have a
fiduciary duty when there is "either a confidence reposed which
invests the person trusted with an advantage in treating the
person so confiding" or "an assumption of control and
responsibility." *Am. Tissue Inc.* v. *Donaldson, Lufkin & Jenrette
Secs. Corp.*, 351 F. Supp. 2d 79, 102 (S.D.N.Y. 2004) ("*American*

*See Apple Records, Inc.*, 529 N.Y.S.2d at 283; *Mandelblatt*, 521 N.Y.S.2d at 676. Though Merrill Lynch may have failed to use its "reasonable best efforts" to secure financing, this issue arises directly out of the parties' contractual agreement and should be reviewed accordingly. For these reasons, Defendant's motion is granted with regard to Plaintiff's claim for breach of fiduciary duty.

## B. Professional Negligence

In its second claim, RBA contends that Merrill Lynch established a professional relationship with RBA, but failed to uphold accepted standards of professional conduct in its efforts to obtain funding for the Seven Hills Resort. Compl. ¶¶88-94. Merrill Lynch again argues that this claim is duplicative of Plaintiff's breach of contract claim and should be dismissed. Def. Br. 8-12. It also contends that New York law does not recognize a claim for professional negligence under these facts. Def. Br. 14-15.

Plaintiff's professional negligence claim is indeed duplicative of its claim for breach of contract. It is

---

*Tissue*") (quotations & citations omitted). Although Robinson has maintained a personal brokerage relationship with Merrill Lynch for approximately 15 years, this relationship is separate from the relationship created by the private placement agreement. That Merrill Lynch happens to be the investment bank where Robinson maintains a brokerage account does not carry over to his dealings as a principal of RBA. Compl. ¶30.

well-settled that, under New York law, a simple breach
of contract is not to be considered a tort unless a
legal duty independent of the of the [sic] contract
itself has been violated. . . . This legal duty must
spring from circumstances extraneous to, and not
constituting elements of, the contract, although it may
be connected with and dependent upon the
contract. . . . However, where the injury alleged is
solely economic and where there was no cataclysmic
occurrence, New York courts have rejected negligence
claims.

*TD Waterhouse Investor Servs., Inc. v. Integrated Fund Servs.,*

*Inc.,* No. 01 Civ. 8986, 2003 WL 42013, at *12 (S.D.N.Y. Jan. 6,

2003) ("*TD Waterhouse*") (not reported in F. Supp.) (quotations &

citations omitted).  Both of these claims arise out of the same

facts and reference the same wrongful conduct as grounds for

relief.  Compl. ¶¶76-81, 88-94.  This again establishes

sufficient grounds to dismiss Plaintiff's claim for professional

malpractice. *See TD Waterhouse*, 2003 WL 42013, at *12.

With regard to Merrill Lynch's duty as a placement agent,

professionals "subject to malpractice liability have extensive

formal learning and training, licensure and regulation indicating

a qualification to practice, a code of conduct imposing standards

beyond those accepted in the marketplace and a system of

discipline for violation of those standards." *Id.* at *13

(quotations & citation omitted).  Therefore, to "maintain a claim

for professional malpractice, the defendant must be a

professional as a matter of law." *Dimsey v. Bank of New York*,

No. 600391, 2006 WL 3740349, at *3 (N.Y. Sup. Ct. Aug. 24, 2006)

(unreported disposition).  That is not the case here.

Plaintiff cites *American Tissue*, for the proposition that
financial advisors, like lawyers, doctors, and accountants should
be held liable for professional negligence.  *See* 351 F. Supp. 2d
at 99 n.21; Pl. Br. 10.  Because this case is distinguishable,
the court need not decide whether financial advisors are subject
to professional malpractice.  Although the contract seems to use
the term "financial advisor" in a broad sense, Merrill Lynch
never assumed the role of financial advisor to RBA in the
traditional sense, exemplified by recommending investments and
general portfolio management.  *See* Kunz Decl. Ex. A §§1-4.
Rather, RBA hired Merrill Lynch as a placement agent to secure
funding, on a reasonable best efforts basis, for the purchase of
real property.  Kunz Decl. Ex. A § 1(a).  These are separate
functions entirely, with the latter possessing none of the
heightened duties associated with services governed by
professional codes of conduct.  *See TD Waterhouse*, 2003 WL 42013,
at *13.  The advisory role contemplated by the parties seems to
be collateral to Merrill Lynch's role as a placement agent and
lacks the public interest element often cited as necessary to
assign liability for professional malpractice.  *See id* at *12-13;
*see also Asian Vegetable Research and Dev. Ctr. v. Inst. of
Intern'l Educ.*, 944 F. Supp. 1169, 1181 (S.D.N.Y. 1996).
Moreover, the harm suffered from Merrill Lynch's alleged breach

was purely economic, which is at odds with the "longstanding New
York rule that economic loss is not recoverable under a theory of
negligence." *Id.* (quotations & citation omitted). Accordingly,
Defendant's motion to dismiss Plaintiff's claim for professional
negligence is granted.

## C. Breach of Contract Claim

Finally, RBA contends that Merrill Lynch breached the
contract by failing to exercise its "reasonable best efforts" to
secure financing for the purchase of land in Seven Hills. Compl.
¶¶76-81. By procuring an offer from DE Shaw, Merrill Lynch
claims that it satisfied this obligation, and in any event the
indemnification provision would likely shield Merrill Lynch from
liability for acts of negligence. Def. Br. 16-17; Kunz Decl. Ex.
A, Annex A.

The elements of a breach of contract claim are (1) the
existence of a contract; (2) due performance by plaintiff; (3)
breach of the contract by defendant; and (4) damages as a result
of the breach. *See R.H. Damon & Co., Inc. v. Softkey Software
Prods., Inc.*, 811 F. Supp 986, 991 (S.D.N.Y. 1993). Merrill
Lynch does not dispute the existence of a valid contract between
the parties; that RBA performed its obligation under the
contract; that RBA has charged Defendant with several acts that
would constitute breach of contract; and that RBA has alleged
damages resulting therefrom. Compl. ¶¶76-81. Thus, RBA has

plainly stated a valid claim for breach of contract under New York law.

As previously mentioned, though, the indemnification provision contained in the agreement limits Merrill Lynch's liability to damages that result from acts of bad faith or gross negligence. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Group, LLC*, 798 N.Y.S.2d 14, 16 (N.Y. App. Div. 2005); Kunz Decl. Ex. A, Annex A. As RBA has not alleged claims involving bad faith, the court must examine whether the allegations contained in RBA's complaint sufficiently charge Merrill Lynch with grossly negligent conduct.

"Gross negligence . . . differs in kind as well as degree from ordinary negligence. . . . It is conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Sutton Park Dev. Corp. Trading Co., Inc. v. Guerin & Guerin Agency, Inc.*, 745 N.Y.S.2d 622, 623 (N.Y. App. Div. 2002) (quotations & citations omitted); *see also Warren v. New York Tel. Co.*, 335 N.Y.S.2d 25, 28-29 (N.Y. Civ. Ct. 1972). At this early stage, however, "where no discovery has been conducted," and "[w]here the inquiry is to the existence or nonexistence of gross negligence, the ultimate standard of care is different [from ordinary negligence], but the question nevertheless remains a matter for jury determination." *Internationale Nederlanden (U.S.) Capital Corp. v. Bankers Trust*

*Co.*, 689 N.Y.S.2d 455, 460 (N.Y. App. Div. 1999).

In Count I of Plaintiff's amended complaint, it alleges that Merrill Lynch: (i) turned away qualified sources of financing; (ii) focused exclusively on Sand Creek (and subsequently on DE Shaw) as a potential investor despite the fact that Sand Creek was objectively unqualified; and (iii) failed to investigate backup sources of financing. Compl. ¶¶78-79. Further, RBA concluded that "Merrill Lynch's breaches of the April 8, 2005 contract were *grossly negligent* because . . . [it] did not undertake even the most basic investigation of potential sources of financing and failed to conduct an adequate due diligence investigation of Sand Creek." Compl. ¶80 (emphasis added).

Accepting these allegations as true, Plaintiff has plainly stated a claim for breach of contract based on gross negligence. And because of the subtle distinctions that differentiate gross negligence from negligence, the court is reluctant to terminate the proceedings at this stage without allowing the parties to conduct formal discovery.

The court also finds Defendant's reliance on the offer from DE Shaw unavailing. In New York, a "'best efforts' clause imposes an obligation to act with good faith in light of one's own capabilities." *McDarren v. Marvel Entm't Group, Inc.*, No. 94 CIV. 0910, 1995 WL 214482, at *4 (S.D.N.Y Apr. 11, 1995) (not reported in F. Supp.) (quotations & citation omitted). "'Best

efforts' requires that plaintiffs pursue all reasonable methods . . ., and whether such obligation has been fulfilled will almost invariably, . . . involve a question of fact." *Kroboth v. Brent*, 625 N.Y.S.2d 748, 749-50 (N.Y. App. Div. 1995) (internal citation omitted). Accordingly, "the precise meaning of [a] 'best efforts' provision [and whether the provision is breached] are factual issues that cannot be resolved on the face of the complaint." *U.S. Airways Group, Inc. v. British Airways PLC*, 989 F. Supp. 482, 491 (S.D.N.Y. 1997).

Although Merrill Lynch obtained an offer to finance the purchase of land from DE Shaw, Plaintiff has alleged other grounds, such as Merrill Lynch's failure to investigate sources of financing other than Sand Creek and DE Shaw, that might constitute a failure to exercise "reasonable best efforts." Compl. ¶¶76-81. In this instance, whether Merrill Lynch used its "reasonable best efforts" is indeed a factual determination that cannot be decided at this stage of the litigation. Therefore, Defendant's motion is denied with regard to breach of contract.

**D. Damages**

As a result of these violations, RBA seeks damages from Merrill Lynch that include: (i) approximately $1 million in payments to extend the option to purchase the 618-acre beach front property; (ii) $35 million in proceeds from the sale of the United States Virgin Island private activity bonds; (iii) the

loss of a reservation for a class II establishment license; and
(iv) the loss of a management agreement with Marriott. Compl.
¶¶5, 22, 59. RBA also claims over $250 million in lost profits
based on the projected earnings of the Seven Hills Resort.
Compl. ¶1. Merrill Lynch, however, argues that Plaintiff's claim
for lost profits is unreasonably speculative, and because of
Plaintiff's failure to mitigate, its claims for general damages
should be dismissed as well. Def. Br. 17-25.

### (1) Lost Profits

To recover lost profits the plaintiff must show both that
the alleged loss is capable of proof with reasonable certainty
and that the damages were fairly within the contemplation of the
parties. *See Kenford Co., Inc. v. Erie County*, 67 N.Y.2d 257,
261 (N.Y. 1986) ("*Kenford*"). Furthermore, when a claim for lost
profits involves a new business, as is the case here, claimant
must satisfy a heightened evidentiary standard, *see Trademark
Research Corp. V. Maxwell Online, Inc.*, 995 F.2d 326, 332 (2d
Cir. 1993), "for the obvious reason that there does not exist a
reasonable basis of experience upon which to estimate lost
profits." *RMLS Metals, Inc. v. IBM Corp.*, 874 F. Supp. 74, 76
(S.D.N.Y. 1995). Though courts often address the issue of lost
profits at the summary judgment stage, New York courts have
dismissed claims for lost profits where the pleadings suggest
that an award of lost profits would require an unreasonable level

of speculation.  *See Calip Dairies, Inc. v. Penn Station News Corp.*, 695 N.Y.S.2d 70, 71 (N.Y. App. Div. 1999); *Lama Holding Co. v. Smith Barney Inc.*, 627 N.Y.S.2d 33, 34 (N.Y. App. Div. 1995).

The court finds the reasoning in *Kenford* to be especially applicable to the facts of this case.  *See Kenford*, 67 N.Y.2d at 261-62.  In *Kenford*, the court rejected a claim for lost profits arising from a domed stadium that was never constructed, concluding that the multitude of assumptions – that the facility would be completed, available for use, and operating profitably for over 20 years - required an impermissible level of "speculation and conjecture."  *Id*. at 262.  Similarly, to award lost profits here, the court would have to assume that RBA obtained the necessary funding to purchase the land, secured the proper zoning and casino licenses, completed construction of the casino, and operated a profitable business for 5 years thereafter.[2]  Oral Arg. Tr. 9-10; Compl. ¶1.

In addition, RBA was unable to advance the project past the initial stages of business development.  With no past performance

_____

[2] Pursuant to *Kenford*, the point from which the court looks forward with regard to the number of future events necessary to prove lost profits is the date the contract was entered.  *Id.* Even if the court started the analysis from the date of breach in this case, the number of assumptions necessary to demonstrate lost profits would still require an unreasonable level of speculation.  *Id.*

to rely upon, RBA must demonstrate lost profits by projecting

future revenues based on similarly situated businesses with

established track records. *See Ciraolo v. Miller*, 525 N.Y.S.2d

861, 862 (N.Y. App. Div. 1988). Unfortunately, the gaming

industry in St. Croix is still in its infancy and cannot provide

a record of performance sufficient to project future profits.

*See Kenford*, 67 N.Y.2d at 261-62; Compl. ¶64(b). Consequently,

there is simply no basis for the court to determine lost profits

at this point or any other stage of the litigation because such a

calculation would require a high degree of speculation. *See* 67

N.Y.2d at 261-62; *PIA Invs. Ltd. v. UBS Secs., Inc.*, 622 N.Y.S.2d

239, 240 (N.Y. App. Div. 1995). There is also no evidence in the

contract or otherwise that Merrill Lynch contemplated liability

for lost profits. *See* 67 N.Y.2d at 261-62. Therefore,

Defendant's motion is granted with regard to Plaintiff's claim

for lost profits.

### (2) General Damages

Merrill Lynch further contends that RBA is not entitled to

general damages because replacing RBA with RBR as the designated

business entity to proceed with the project breaks the chain of

causation with regard to damages and represents a failure to

mitigate. Def. Br. 17-19. An "aggrieved party is required to

make reasonable efforts to mitigate its damages." *Nat'l*

*Commc'ns. Assoc., Inc. v. Am. Tel. and Tel. Co.*, No. 93 Civ.

3707, 2001 WL 99856, at *6 (S.D.N.Y. Feb. 5, 2001) (not reported
in F. Supp.).  The "defense of failure to mitigate requires the
defendant to establish not only that the plaintiff unreasonably
failed to mitigate, but that reasonable efforts would have
reduced the damages." *Coastal Power Int'l, Ltd. v. Transcon.*
*Capital Corp.*, 10 F. Supp. 2d 345, 370 (S.D.N.Y. 1998).  After
Merrill Lynch terminated the agreement with RBA, it was RBR that
actually secured financing, purchased the land in Seven Hills,
and moved the project forward.  Compl. ¶¶63, 66.  Merrill Lynch
claims that these actions by RBR, which represent efforts to
mitigate damages, cannot be credited to RBA as evidence of its
attempt to mitigate.  Def. Br. 17-19.  During oral argument on
the motion, RBA responded that changing entities was likely
necessary to appease their new investors and therefore a
necessary step in mitigating damages.  Oral Arg. Tr. 54. Whether
a party puts forth sufficient effort to mitigate damages is a
question of fact and typically resolved during trial.  *See K&H*
*Kawasaki Inc. v. Yamaha Motor Corp.*, U.S.A., No. 95-CV-1824, 1998
WL 236204, at *6 (N.D.N.Y. May 7, 1998) (not reported in F.
Supp.); *Xpedior Creditor Trust v. Credit Suisse First Boston*
*(USA), Inc.*, 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004).  In the
absence of clear legal authority mandating that a change in
business entity breaks the chain of causation for purposes of
damages and constitutes a failure to mitigate, the court is not

inclined to dismiss Plaintiff's claim for general damages at this early stage.  Defendant's motion to dismiss Plaintiff's claim for general damages is denied.

### IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part.  Accordingly, it is hereby

ORDERED that Defendant's motion to dismiss Plaintiff's claim for breach of fiduciary duty is GRANTED; it is further

ORDERED that Defendant's motion to dismiss Plaintiff's claim for professional negligence is GRANTED; it is further

ORDERED that Defendant's motion to dismiss Plaintiff's claim for lost profits is GRANTED; it is further

ORDERED that Defendant's motion to dismiss Plaintiff's claim for breach of contract is DENIED; and it is further

ORDERED that Defendant's motion to dismiss Plaintiff's claim for damages is DENIED.

June 3, 2008
_____
New York, NY

Judith M. Barzilay
_____
Judith M. Barzilay, Judge